Jaymie Parkkinen (SBN 318394)
jparkkinen@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Claire de Roulhac*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CLAIRE DE ROULHAC, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CAREMETX, LLC, et al.,

Defendants.

Case No. 2:26-cv-00983-FLA-MBK

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: April 17, 2026
Time: 1:30 p.m.
Dept.: 6B
Judge: Hon. Fernando L. Aenlle-Rocha

Complaint Filed: January 30, 2026
Trial Date: None Set

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 3

I. INTRODUCTION ..... 6

II. FACTUAL BACKGROUND ..... 6

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 7

A. Plaintiff has Article III Standing ..... 7

B. The Court Has Personal Jurisdiction Over Defendant ..... 11

1. Defendant purposefully directed its conduct towards California ..... 12

a. Defendant's conduct was intentional and it knew the harm would be suffered in California ..... 12

b. Defendant expressly aimed its conduct towards California ..... 12

2. Plaintiff's claims arise from Defendant's California contacts ..... 15

3. The exercise of jurisdiction is reasonable ..... 16

C. Plaintiff's Claims Are Sufficiently Pled ..... 18

1. Plaintiff pleads a violation of CIPA's trap and trace provision ..... 18

a. Plaintiff pleads all three elements of a trap and trace claim ..... 18

b. CIPA's trap and trace provision applies to the Internet ..... 19

2. Plaintiff adequately pleads a claim for intrusion upon seclusion ..... 23

3. Plaintiff states a claim under the UCL ..... 24

D. Leave To Amend Should Be Granted ..... 25

V. CONCLUSION ..... 25

CERTIFICATE OF COMPLIANCE ..... 27

# TABLE OF AUTHORITIES

Cases


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 7

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) ........ 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 7

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) ........ 12, 13, 14, 15, 16

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 25

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........ 16

*Calder v. Jones*, 465 U.S. 783 (1984) ........ 12

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........ 20, 21, 22

*Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100 (C.D. Cal. Dec. 15, 2025) ........ 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ........ 24

*Deivaprakash v. Conde Nast Digit.*, 2025 U.S. Dist. LEXIS 193968 (N.D. Cal. Sep. 30, 2025) ........ 9, 22, 23

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ........ 25

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ........ 20, 23

*Gabrielli v. Motorola Mobility LLC* 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ........ 14

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sept. 2, 2025) ........ 22

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........ 10, 17, 18, 19, 20, 21

*Harris v. iHeartMedia, Inc.*, 2026 U.S. Dist. LEXIS 23256 (N.D. Cal. Jan. 29, 2026) ........ 8, 9, 11

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) ........ 23

*In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) ........ 8, 23, 24

*In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) ........ 20

*In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 23

*In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 10, 23

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........ 8

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) .......... 25

*Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) .......... 14, 23, 24

*Lexin v. Superior Court*, 47 Cal. 4th 1050 (2010) .......... 22

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......... 25

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) .......... 11

*Mirmalek v. L.A. Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 19, 21

*Moody v. C2 Educ. Sys., Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 18, 19, 21

*People v. Avery*, 27 Cal. 4th 49 (2002) .......... 22

*People v. Guzman*, 35 Cal. 4th 577 (2005) .......... 21

*People v. Manzo*, 53 Cal. 4th 880 (2012) .......... 22

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .......... 7, 8, 10

*Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 8, 9, 18, 21, 22

*Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 18

*Santa Ana Hosp. Med. Ctr. v. Belshe*, 56 Cal. App. 4th 819 (1997) .......... 20

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... 7, 12, 13

*Semien v. PubMatic Inc.*, 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026) .......... 9

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 19, 20, 21, 23

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) .......... 16

*Thomas G. Ferruzzo, Inc. v. Superior Court*, 104 Cal. App. 3d 501 (1980) .......... 20

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) .......... 11

*Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023) .......... 16

*Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 19

<u>Statutes</u>

Cal. Bus. & Prof. Code § 17204 .......... 25

Cal. Civ. Code § 1798.175 .......... 22

Cal. Penal Code § 630 .......... 20, 24

Cal. Penal Code § 638.50(c) .......... 18, 19, 21, 22

Cal. Penal Code § 638.51(a) ........ 18
Code Civ. Proc. § 1858 ........ 21

# I. INTRODUCTION

Defendant CareMetx, LLC's motion rests on a series of mischaracterizations—of the Complaint, of the technology at issue, and of the law. Stripped of these portrayals, this case is straightforward. Plaintiff Claire de Roulhac alleges that Defendant embedded tracking technologies on its website (the "Website") that, upon her visit, captured identifying information about her activity, transmitted that information to data brokers, and converted her visit into a persistent, monetizable profile, all without her knowledge or consent. Dkt. 1 ¶¶ 1-8, 16-32. Courts across this Circuit have repeatedly held that materially identical allegations state claims and confer standing. This case is no different.

Unable to engage with those allegations on their terms, Defendant reframes them. It attacks a strawman, claiming that Plaintiff challenges the routine receipt of IP addresses, even though the Complaint never alleges, references, or relies on IP address collection at all, revealing that Defendant has effectively hallucinated a claim that does not exist rather than confronting the ones actually pled. It recasts its sophisticated tracking and profiling system that collects visitors' data without their consent as "routine." And it asks the Court to read the California Invasion of Privacy Act ("CIPA"), a statute specifically enacted to address evolving surveillance technologies, as if it applied only to landline telephones. None of those arguments withstand scrutiny.

In short, Defendant's position is that its conduct is too common to be unlawful and too technical for concern. The law says otherwise. Plaintiff has plausibly alleged that Defendant chose to deploy tracking technologies that identify, monitor, and monetize website visitors like her without their consent. At this stage, that is enough.

# II. FACTUAL BACKGROUND

On October 19, 2025, Plaintiff visited Defendant's Website. Dkt. 1 ¶ 25. Unbeknownst to her, that visit did not remain confined to a simple interaction between her browser and Defendant's Website. Instead, Defendant had embedded tracking technologies designed to monitor visitors, capture information about them, and

transmit that information to third-party data brokers. *Id.* ¶¶ 1, 16-20.

When Plaintiff accessed the Website, these tracking tools (the "Tracking Beacons") collected information about her visit, including the pages she viewed, how she navigated the site, and technical signals associated with her device, and transmitted that information to third-party data brokers. *Id.* ¶¶ 18-20, 23-25. Those data brokers, in turn, used the data to identify Plaintiff and associate her activity with a broader identity profile for downstream commercial use, including targeting and analytics. *Id.* ¶¶ 23-24, 29-32. Defendant deployed the Tracking Beacons covertly, without providing meaningful notice or obtaining Plaintiff's consent before her information was captured and transmitted. *Id.* ¶¶ 1, 5, 25, 55.

## III. <u>LEGAL STANDARD</u>

On a motion to dismiss under Rule 12(b)(1) or 12(b)(2), where the motion is based on the pleadings and supporting materials, Plaintiff need only make a *prima facie* showing of jurisdictional facts, and the Court must resolve all factual disputes and draw all reasonable inferences in Plaintiff's favor. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion, a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is improper where, as here, the complaint plausibly alleges entitlement to relief.

## IV. <u>ARGUMENT</u>

### A. <u>Plaintiff has Article III Standing.</u>

Plaintiff has Article III standing because she alleges a concrete invasion of privacy that bears a close relationship to harms traditionally recognized at common law. *Popa v. Microsoft Corp.*, 153 F.4th 784, 789-91 (9th Cir. 2025). The inquiry is functional. Courts ask whether the alleged conduct resembles traditional privacy torts,

particularly intrusions that deprive a person of control over their information or disclose that information to others without consent. *Id.* at 791. Consistent with that framework, courts repeatedly hold that standing exists where a defendant collects identifying data, uses it to recognize or profile a user, and shares it with third parties beyond the original interaction. *See, e.g., Harris v. iHeartMedia, Inc.*, 2026 U.S. Dist. LEXIS 23256, at *2-6 (N.D. Cal. Jan. 29, 2026) (standing where tracking transmitted identifying data to third parties and enabled cross-site profiling); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087-88 (N.D. Cal. 2025) (same where data used to generate identifying profiles); *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598-601 (9th Cir. 2020) (collection and dissemination of users' data across websites constitutes a concrete privacy injury).

That is exactly what is alleged here. Defendant embedded the Tracking Beacons not to operate its website, but to "identify visitors and convert their browsing activity into commercially useful intelligence."[1] Dkt. 1 ¶ 1. Those Tracking Beacons capture specific categories of information—such as the exact pages a user visits, how she arrived there, the technical characteristics of her browser and device, and identifiers that persist across requests—that function together to single out a user and link her activity across multiple interactions. *Id.* ¶¶ 18-20. In practical terms, these signals operate like a digital signature: they allow the same user to be recognized over time, even without providing her name. Defendant then transmits that information to data brokers so they can "determine who the visitor is" and "associate the visit with an

---

[1] Defendant's reliance on self-selected "key website pages," Dkt. 16-3 ¶ 6, misuses the incorporation-by-reference doctrine. That doctrine exists to prevent plaintiffs from "selecting only portions of documents that support their claims, while omitting portions . . . that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Defendant here does the opposite—presenting only handpicked pages while omitting the full Website context and, more importantly, the information concerning the tracking scripts and software operating behind the scenes, which are central to Plaintiff's claims. That selective presentation is not a proper basis for consideration at the pleading stage.

identity profile." *Id.* ¶¶ 17, 23-24. The result is that an otherwise anonymous Website visit is converted into a persistent, identifiable record tied to a person without their consent and is usable well beyond the Website itself. *Id.* ¶¶ 6, 24-25, 29-32. That is not routine web functionality. It is the very type of identification, profiling, and third-party disclosure that courts recognize as a concrete invasion of privacy.

Courts applying *Popa* hold that this type of conduct states a concrete injury, particularly where it enables cross-site or cross-context tracking. *See Harris*, 2026 U.S. Dist. LEXIS 23256, at *2-6 (standing where tracking transmitted identifying data to third parties and enabled tracking "across the internet" to build "comprehensive, non-anonymous profiles"); *Semien v. PubMatic Inc.*, 2026 U.S. Dist. LEXIS 15196, at *10-11 (N.D. Cal. Jan. 27, 2026) (same where tracking data used to construct user profiles); *Riganian*, 791 F. Supp. 3d at 1087 (same where tracking generated "uniquely identifying profiles" across contexts); *Deivaprakash v. Conde Nast Digit.*, 2025 U.S. Dist. LEXIS 193968, at *4 (N.D. Cal. Sep. 30, 2025) (profile generation and dissemination sufficient). These cases reflect a settled rule: information becomes personal when it is used to identify a visitor, and its unauthorized dissemination is itself the injury.

The invasion alleged here is not abstract. Defendant attempts to minimize the Website as "B2B," but that label is irrelevant. Standing turns on what a visitor's activity reveals and how Defendant uses it, not Defendant's business model. The Complaint alleges that the Website concerns healthcare-related services and that a visitor's navigation can reveal "private facts about the visitor's personal finances and healthcare needs." Dkt. 1 ¶ 21. That is not conjecture. Even without entering information into a form, the pages a visitor selects, the sequence of those visits, and the time spent on particular topics can disclose interests in issues such as patient affordability, access to treatment, or specific disease areas. Defendant's own chosen Website excerpts underscore the point. They include content addressing patient concerns relating to access to healthcare, affordability, neurological conditions such as Parkinson's disease,

ophthalmology, diabetes monitoring, and metabolic disorders. Dkt. 16-6 at 14-15, 28-30. When that visit-level activity is captured, linked to an identity, and transmitted to data brokers, it becomes attributable to a person and capable of broad downstream use and targeting. Dkt. 1 ¶¶ 24, 29-32. The injury is the forced conversion of that activity into an identifiable profile without consent and its export into a third-party data broker ecosystem for uses far removed from the original visit.

Defendant's IP-address argument rests on an apparent hallucination—or, at minimum, a profound misreading of the Complaint. Defendant writes: "Plaintiff's own Complaint concedes this, admitting that accessing any website 'requires the user's public IP address[,]'" purporting to quote paragraphs 15 and 16 of Plaintiff's Complaint. Dkt. 16-1 at 14. But paragraph 15 concerns Doe defendants, and paragraph 16 alleges that Defendant's Tracking Beacons were deployed for identity matching and monetization. Dkt. 1 ¶¶ 15-16. The Complaint nowhere mentions IP addresses. Defendant has therefore manufactured a claim Plaintiff never brought and attributed to the Complaint language it simply does not contain. The Court should disregard this invented strawman and evaluate the allegations actually pled.

Regardless, courts routinely reject defendants' attempts to trivialize such conduct by isolating a single data point or recasting the allegations as routine web functionality. *See In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (information used to identify users constitutes personal data); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (focus is on whether data is used to identify individuals, not its technical form). The relevant question is how the data is used. Here, Plaintiff alleges Defendant used these signals to identify her and disclose her activity beyond the Website. Dkt. 1 ¶¶ 23-25, 28-29. That is sufficient.

Nor is this *Popa*. There, the plaintiff alleged limited, site-specific tracking and "identifie[d] no" meaningful invasion of privacy. 153 F.4th at 791. Here, Plaintiff alleges the opposite: identification, cross-context tracking, and third-party

dissemination. Courts treat those features as sufficient to establish standing and to distinguish *Popa*. *See, e.g., Harris*, 2026 U.S. Dist. LEXIS 23256, at *5-6.

Taken as alleged, Defendant intercepted Plaintiff's communications, used them to identify her, tracked her activity beyond a single interaction, and disclosed that information to third parties for profiling and monetization—without her consent. Dkt. 1 ¶¶ 6, 19-25, 28-29, 53-55. That is a textbook invasion of privacy.

Defendant's arguments on traceability and redressability fare no better. Traceability requires only that Plaintiff's injury be "fairly traceable" to Defendant's conduct, not that Defendant be the sole cause or that every downstream consequence be identified. *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011). Plaintiff satisfies that standard. She alleges that Defendant chose to embed tracking technologies on its Website, that those technologies captured her information during her visit, and that Defendant transmitted that information to its data broker partners for identification and profiling. Dkt. 1 ¶¶ 1, 16-25. That is a direct causal chain. Defendant's attempt to reframe the injury as dependent on "independent third parties" ignores the allegations: those third parties act pursuant to Defendant's design and partnerships, not in some intervening, speculative manner. *Id.* ¶¶ 3, 22-24, 28.

Redressability is equally straightforward. Plaintiff seeks damages, injunctive relief prohibiting Defendant's ongoing tracking practices, and an order requiring Defendant to delete unlawfully obtained data. *Id.* ¶¶ 58, 68, 82. That relief would directly remedy the injury by compensating Plaintiff, stopping the challenged conduct, and preventing continued use of her information. Defendant does not contend that it has ceased its practices, nor could it plausibly argue that such relief would be ineffective. That is sufficient. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 282-83 (2021) (damages redress past injury); *Maya*, 658 F.3d at 1065, 1069 (injunctive relief sufficient to redress ongoing harm).

### B. The Court Has Personal Jurisdiction Over Defendant.

Specific jurisdiction exists where (1) Defendant purposefully directed its

conduct toward California, (2) Plaintiff's claims arise out of or relate to those California contacts, and (3) the exercise of jurisdiction is reasonable. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (en banc); *Schwarzenegger*, 374 F.3d at 802. For tort claims such as these, the first prong is analyzed under the *Calder* effects test: Defendant must have (a) committed an intentional act, (b) expressly aimed at the forum, (c) causing harm Defendant knew would likely be suffered there. *Briskin*, 135 F.4th at 751; *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). That test is satisfied here.

**1. Defendant purposefully directed its conduct toward California.**

a. *Defendant's conduct was intentional and it knew the harm would be suffered in California.*

Defendant does not dispute that its conduct was intentional or that it knew the harm would be suffered in California. Its only argument goes to express aiming. That argument fails.

b. *Defendant expressly aimed its conduct toward California.*

Defendant expressly aimed its conduct toward California. As Defendant appears to concede, *Briskin* is dispositive here. *Briskin*, 135 F.4th at 756 ("[I]t is clear that Shopify expressly aimed its conduct at California through its extraction, maintenance, and commercial distribution of the California consumers' personal data in violation of California laws."). There, the Ninth Circuit rejected the argument that a defendant escapes jurisdiction because its business is national rather than California-specific, and held that express aiming is satisfied where a defendant's contacts are "its own choice and not random, isolated, or fortuitous," even if it serves a nationwide audience. *Id*. at 757-58. The inquiry is straightforward: whether Defendant, through its own system, reached into California, knew it was dealing with a California user, and extracted value from that interaction.

The Complaint alleges exactly that. Plaintiff visited the Website from California. Dkt. 1 ¶¶ 11, 13, 53. Defendant's Tracking Beacons captured routing information sufficient to recognize Plaintiff as a California user and then proceeded to capture and

transmit her identifying data to data brokers. *Id*. ¶¶ 11, 16-25. Defendant did not merely host a passive, informational website; it hosted a website that actively deployed tracking technology to identify visitors and monetize their activity. *Id*. ¶¶ 1-6, 26-32.

Those allegations satisfy *Briskin*. And critically, Defendant does not meaningfully dispute them.

Defendant offers no evidence to contradict Plaintiff's allegations and does not meaningfully contest that its systems received location-revealing routing information from Plaintiff's California visit, that it deployed tracking beacons that operated in the background to capture her data, or that it used that data for commercial purposes. *Id*. ¶¶ 11, 16-25, 28-29. Those allegations must therefore be taken as true. *Schwarzenegger*, 374 F.3d at 800 ("[U]ncontroverted allegations in the complaint must be taken as true.").

Taken as true, Defendant knew Plaintiff was located in California at or near the outset of the interaction, and proceeded to run tracking technology that captured and transmitted her identifying information for downstream profiling and monetization. Dkt. 1 ¶ 11. That is sufficient under *Briskin*. The Ninth Circuit made clear that express aiming is satisfied where a defendant's contacts are "its own choice and not random, isolated, or fortuitous," and where the defendant knows the user's location "either prior to or shortly after" the challenged conduct begins. 135 F.4th at 756, 758 (internal citations and quotation marks omitted). Defendant does not dispute either point here.

Defendant's own motion reinforces that conclusion. It asserts that Plaintiff's browser "necessarily shared" location-bearing routing information (e.g., IP address) in the course of visiting the Website. Dkt. 16-1 at 14. That concession forecloses any attempt to characterize Defendant's contact with California as happenstance. Defendant's system, by design, receives information revealing where a request originates and then uses that interaction for commercial purposes. Under *Briskin*, that is the opposite of "random, isolated, or fortuitous." 135 F.4th at 758.

Defendant's effort to minimize its California contacts fares no better. Its reliance

on the claim that "4.4%" of its business customers are located in California is a particularly unilluminating statistic. It says nothing about the revenue Defendant derives from California, the volume of California users interacting with its Website, or the extent to which Defendant exploits data from California visitors—the conduct at issue here. Business is measured in revenue and commercial activity, not the percentage of clients headquartered in a particular state.[2] And in any event, the relevant contact is Defendant's direct interaction ***with Plaintiff*** in California, not how Defendant chooses to characterize its broader customer base.

Post-*Briskin* decisions applying personal jurisdiction in CIPA cases confirm the point and underscore how little Defendant's argument requires. In *Gabrielli v. Motorola Mobility LLC*, the court held that jurisdiction was proper where the defendant allegedly collected data from California users through a website, and it rejected the argument that express aiming requires California-specific sales or transactions. 2025 U.S. Dist. LEXIS 133836, at *20-23 (N.D. Cal. July 14, 2025). In *Casillas*, the court likewise found express aiming where the plaintiff alleged the defendant intentionally deployed tracking technologies on its website. 2025 U.S. Dist. LEXIS 260100, at *7-8 (C.D. Cal. Dec. 15, 2025). And in *Lewis v. Magnite, Inc.*, the court rejected the argument that contact with California occurred only because users happened to access a website, finding defendant expressly aimed its conduct toward California where tracking technology collected California user data and shared it for downstream use. 2025 U.S. Dist. LEXIS 263675, at *18-19 (C.D. Cal. Dec. 4, 2025).

Those cases fit this one precisely. Plaintiff alleges Defendant chose to install the Tracking Beacons on its Website, used them to extract visitor-identifying data from

---

[2] Regardless of the actual percentage of Defendant's California contacts, it is sufficient for personal jurisdiction that Defendant's commercial ambitions extend to California ***at all***. *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *8 (C.D. Cal. Dec. 15, 2025) ("*Calder* effects test [satisfied] because Defendant's alleged conduct was 'targeted at a plaintiff whom the defendant kn[ew] to be a resident of the forum state" and the 'geographic scope' of Defendant's 'commercial ambitions' for its Website extended to California residents." (quoting *Briskin*, 135 F.4th at 753-54, 756)).

California users, and transmitted that data to brokers whose business is identity profiling and monetization. Dkt. 1 ¶¶ 1-6, 16-25, 28-32, 49-57. Defendant does not dispute those core allegations. Under *Briskin* and its progeny, that is express aiming.

Defendant's attempt to recast the Website as merely "informational" or "B2B" does not change the analysis. Businesses do not visit websites; people do. The relevant contact is Defendant's direct interaction with a California user through an interactive website and the tracking infrastructure it chose to deploy. *Briskin* itself involved a defendant that did not sell directly to consumers but facilitated online commerce and harvested user data in the process. 135 F.4th at 746-48, 755-56. That did not defeat jurisdiction. Nor does it here. Defendant's own exhibits confirm that the Website invites user interaction—through demos, support requests, forms, and job applications. *See, e.g.,* Dkt. 16-6 at 38, 45-47, 56-72, More fundamentally, the interaction that matters is the hidden one: the tracking code operating behind the scenes that Defendant chose to deploy to capture, transmit, and monetize California users' data—which again, Defendant does not dispute.

In short, Defendant is silent as to the facts that matter: it received location-bearing information from a California user, used that information to initiate and carry out tracking, and exploited the resulting data for commercial purposes. Under *Briskin*, that is express aiming.

**2. Plaintiff's claims arise from Defendant's California contacts.**

Plaintiff's claims also arise out of and relate to Defendant's California contacts. That requirement does not do heavy work here because the connection is direct. The suit challenges the same conduct that connected Defendant to California in the first place: its interaction with Plaintiff's device in California, its capture of her identifying signals during that California visit, and its disclosure of those signals to third parties. Dkt. 1 ¶¶ 11, 25, 53. *Briskin* explained that relatedness is satisfied where the plaintiff's claims are tied to the defendant's California-directed data extraction and similar injuries "will tend to be caused by those contacts." 135 F.4th at 760 (quoting *Yamashita*

*v. LG Chem, Ltd.*, 62 F.4th 496, 505 (9th Cir. 2023)). That is this case. Plaintiff was injured only because Defendant reached into California and tracked her there. This is not a case where Plaintiff seeks to bootstrap unrelated California business into jurisdiction. The forum contact and the alleged wrong are the same conduct.

**3. The exercise of jurisdiction is reasonable.**

Defendant has not carried its burden to show that the exercise of jurisdiction would be unreasonable. Once purposeful direction and relatedness are established, "the burden then shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Briskin*, 135 F.4th at 761 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Courts evaluate reasonableness using familiar factors, including the burden on the defendant, the forum state's interest, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficiency, and the existence of an alternative forum. *Briskin*, 135 F.4th at 761. None supports Defendant here.

*First*, the burden on Defendant is minimal. Defendant is a sophisticated company that operates a nationwide, internet-based platform and admittedly does meaningful business in California. Dkt. 16-3 ¶ 8. Defendant cannot credibly claim that California is a convenient forum for its business but an undue burden for this litigation. *Burger King*, 471 U.S. at 474. Courts routinely reject that argument, particularly where, as here, "modern advances in communications and transportation have significantly reduced the burden of litigating in another [forum]." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988). That was true in 1988, and even more so today. Further, the nature of this case, centered on website tracking and data flows, means that discovery will be largely electronic, and depositions can be conducted remotely. Defendant offers no concrete showing of hardship, let alone the "compelling case" required.

*Second*, California's interest in adjudicating this dispute is substantial. This case seeks to enforce California privacy law on behalf of a California resident injured in

California. California has a well-established and strong interest in protecting its consumers' privacy and data security. *Greenley*, 684 F. Supp. 3d at 1045 ("California's strong interest in [privacy] issues is readily apparent, and the local interests in the controversy weigh against transfer."). Defendant's cursory references to other statutes, such as the California Consumer Protection Act, only reinforce that point—they underscore the State's policy judgment that Californians' data privacy warrants robust protection. This factor strongly favors jurisdiction. *Id.*

*Third*, Plaintiff's interest in obtaining convenient and effective relief favors California. Plaintiff resides here, the alleged injury occurred here, and the putative class is comprised of California residents. Requiring Plaintiff—and potentially thousands of California class members—to pursue relief elsewhere makes no sense.

*Fourth*, the interstate judicial system's interest in efficiency also supports jurisdiction in California. This case concerns alleged data flows involving third-party entities such as LiveRamp and 6sense, both headquartered in California. To the extent third-party discovery is required, it will be far more efficient to proceed in a forum where those entities are located. Defendant offers no competing efficiency rationale. Its suggestion that Maryland would be more appropriate is unsupported and ignores the location of the vast majority of relevant witnesses and evidence.

*Fifth*, Defendant's alternative-forum argument collapses under its own theory. Defendant contends that California law does not apply extraterritorially, yet simultaneously asserts that Plaintiff can obtain adequate relief in Maryland. Those positions are in tension. If, as Defendant argues, California privacy statutes do not apply outside California, then Maryland is not a meaningful substitute forum for vindicating the California-specific rights at issue here.

*Finally*, Defendant does not meaningfully invoke sovereignty concerns or identify any conflict with the interests of another state. That silence is telling. Where, as here, the case involves application of California law to alleged injuries suffered by a California resident in California, there is no sovereignty-based reason to decline

jurisdiction.

In sum, each of the relevant factors confirms that exercising jurisdiction over Defendant is reasonable. Defendant falls far short of the "compelling case" required to defeat jurisdiction under *Burger King* and *Briskin*. The motion should be denied.

**C. <u>Plaintiff's Claims Are Sufficiently Pled.</u>**

**1. Plaintiff pleads a violation of CIPA's trap and trace provision.**

a. *Plaintiff pleads all three elements of a trap and trace claim.*

To state a claim under CIPA's trap and trace provision, a plaintiff must allege: (1) the installation or use of a device or process; (2) that captures dialing, routing, addressing, or signaling information reasonably likely to identify the source of an electronic communication; and (3) lack of consent. Cal. Penal Code §§ 638.50(c), 638.51(a); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025). Plaintiff does so here. That should end the inquiry at the pleading stage.

The first element is straightforward. The statute applies broadly to any "device or process," and courts focus on function, not form. Cal. Penal Code § 638.50(c). The Complaint alleges that Defendant embedded the Tracking Beacons on its Website that initiate communications with third-party data brokers and capture visitors' data as they interact with the site. Dkt. 1 ¶¶ 1, 16-20, 23-25. Courts applying CIPA have repeatedly held that embedded tracking software of this kind qualifies as a "process" within the statute. *Greenley*, 684 F. Supp. 3d at 1050; *Moody v. C2 Educ. Sys., Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024); *Riganian*, 791 F. Supp. 3d at 1093. There is no serious dispute that this element is satisfied.

The second element—whether the information captured is "reasonably likely to identify the source" of the communication—is likewise plausibly alleged. The Complaint does not rely on conclusory assertions. It explains what information is collected, how it functions, and why it is identifying. Specifically, Plaintiff alleges that Defendant's Tracking Beacons capture page-level URLs reflecting the exact content requested, referrer data showing how the user arrived at the site, browser and device

characteristics, timestamps, and persistent identifiers associated with each session. Dkt. 1 ¶¶ 18-20. The Complaint alleges these signals are combined and transmitted to data brokers who use them to "determine who the visitor is" and "associate the visit with an identity profile." *Id.* ¶¶ 17, 23-24.

That allegation goes directly to the statutory standard. The question is not whether Defendant obtains a user's name in the first instance. The statute asks whether Defendant captures information "reasonably likely to identify the source" of a communication. Cal. Penal Code § 638.50(c). Here, Plaintiff alleges that Defendant collects a set of signals that, when combined, distinguish a user, render her activity linkable over time, and enable third parties to identify her. Dkt. 1 ¶¶ 20, 23-24. That is sufficient. Courts consistently hold that URLs, referrer data, and device-level identifiers fall within the statute where they are used to identify or recognize users. *Greenley*, 684 F. Supp. 3d at 1050 (software that "identifies consumers, gathers data, and correlates that data" qualifies); *Moody*, 742 F. Supp. 3d at 1076-77 (same for web tracking technologies); *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 898 (S.D. Cal. 2025); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *8 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024). Defendant's effort to isolate individual data points and label them "routine" ignores both the allegations and the law. The identifying capability arises from the aggregation of signals and their use for identity matching. Plaintiff alleges exactly that.

The third element—lack of consent—is also adequately pled. Plaintiff alleges that Defendant deployed these Tracking Beacons covertly and that no consent was obtained before that collection occurred. Dkt. 1 ¶¶ 1, 5, 25, 57. She further alleges that Defendant did not provide meaningful notice that third-party tracking technologies would intercept and receive her communications. *Id.* Those are concrete factual allegations of non-consent and must be accepted as true at this stage.

b. *CIPA's trap and trace provision applies to the Internet.*

Defendant does not meaningfully engage with the substantive elements of

Plaintiff's trap and trace claim. Instead, it argues that the statute does not apply to internet-based technologies or should be narrowly construed.[3] Those arguments fail.

Defendant's argument rests on a basic misconception: it asks the Court to freeze privacy protections in the era of telephone landlines, even though CIPA was enacted to address privacy threats created by evolving technology. The Legislature said exactly that. It found that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping," that the "continual and increasing use" of those techniques poses "a serious threat to the free exercise of personal liberties," and that statutory protections were necessary "to protect the right of privacy of the people of this state." Cal. Penal Code § 630. That directive is technology-neutral and forward-looking. It targets the function—surveillance of private communications—not the medium.

Courts interpret CIPA accordingly. The statute is read "broad[ly]" to effectuate its privacy-protective purpose, not narrowly to confine it to outdated technologies. *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 172784, at *77 (N.D. Cal. Sept. 26, 2013) (CIPA entitled to an "expansive reading" given legislative intent); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002). And courts applying modern technologies have rejected precisely the argument Defendant makes here—that CIPA is limited to telephones. *See Shah*, 754 F. Supp. 3d at 930 ("California courts do not read California statutes as limiting themselves to the traditional technologies . . . in place at the time the statutes were enacted"); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1105 (S.D. Cal. 2025) (rejecting argument that CIPA applies only to landline telephones); *Greenley*, 684 F. Supp. 3d at 1050.

---

[3] Defendant's reliance on California Superior Court rulings is misplaced. Such decisions carry no precedential weight. *See Santa Ana Hosp. Med. Ctr. v. Belshe*, 56 Cal. App. 4th 819, 831 (1997) ("a written trial court ruling has no precedential value"); *Thomas G. Ferruzzo, Inc. v. Superior Court*, 104 Cal. App. 3d 501, 503 (1980) ("trial court rulings are [not] binding"). The Court should disregard those cases and the arguments premised on them.

The statutory text confirms the point. A “trap and trace device” is defined as any “device or process” that captures “dialing, routing, addressing, or signaling information” “reasonably likely to identify the source of a wire or electronic communication.” Cal. Penal Code § 638.50(c). That is not telephone-specific language. A telephone-only statute would not refer to a “process,” nor would it use modern network concepts like “routing,” “addressing,” or “signaling” information. The Legislature also chose to regulate “electronic communication[s],” not just telephone calls. *Id*. And notably, the word “telephone” appears nowhere in §§ 638.50 or 638.51. Courts decline invitations to insert such limitations where the Legislature did not. *See* Code Civ. Proc. § 1858; *People v. Guzman*, 35 Cal. 4th 577, 587 (2005); *Shah*, 754 F. Supp. 3d at 929 (“Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register.”).

Consistent with that text and purpose, courts hold that software-based tracking technologies fall within the statute. “Today, pen registers take the form of software.” *Greenley*, 684 F. Supp. 3d at 1050. Software that “identifies consumers, gathers data, and correlates that data” qualifies because the statute focuses on the identifying function, not the tool’s form. *Id*. Courts applying § 638.50 and § 638.51 repeatedly reject efforts to limit the statute to telephones and instead recognize that “software may qualify as a pen register or trap and trace device.” *Moody*, 742 F. Supp. 3d at 1077; *see also Riganian*, 791 F. Supp. 3d at 1093 (statute extends beyond “information from telephones” to modern data-collection tools); *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *8-9 (rejecting telephone-only limitation and holding trackers qualify as a “device or process”); *Camplisson*, 809 F. Supp. 3d at 1105.

Defendant’s contrary argument depends on ignoring both the statutory language and this body of authority. Its reliance on legislative discussions framed around law enforcement or telephony reverses the interpretive order. The starting point is the enacted text, which is deliberately broad. Whatever the motivating examples may have been, “legislators did not limit the statutory language to only telephone technologies.”

*Camplisson*, 809 F. Supp. 3d at 1105. That is dispositive.[4]

Defendant's fallback reliance on the rule of lenity fares no better. Lenity applies only where, after ordinary tools of statutory construction, "two reasonable interpretations of the same provision stand in relative equipoise." *People v. Avery*, 27 Cal. 4th 49, 58 (2002). Where legislative intent is clear, "there is no need to invoke the rule of lenity." *People v. Manzo*, 53 Cal. 4th 880, 889 (2012) (quoting *Lexin v. Superior Court*, 47 Cal. 4th 1050, 1102 n.30 (2010)).

There is no such ambiguity here. The statute defines the relevant tool ("device or process"), the type of data captured ("routing, addressing, or signaling information"), and the category of communication ("wire or electronic"). Cal. Penal Code § 638.50(c). Courts applying these provisions to modern technologies have repeatedly found the language clear and have rejected lenity arguments outright. *Riganian*, 791 F. Supp. 3d at 1094 ("no role for th[e] rule here"); *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *15 (N.D. Cal. Sept. 2, 2025) (same); *Deivaprakash v. Condé Nast Digit.*, 798 F. Supp. 3d 1100, 1108-09 (N.D. Cal. 2025) (lenity inapplicable where statute is clear and should be construed to protect privacy).

Defendant identifies no "grievous ambiguity" in the statutory text. It advances only a narrower interpretation that conflicts with the statute's language and the weight of authority. That is not a basis for lenity. And where, as here, the California Supreme Court has instructed that CIPA should be interpreted to protect privacy interests, courts do not construe it narrowly to defeat that purpose. *Deivaprakash*, 798 F. Supp. 3d at

[4] Defendant's purported conflict between CIPA and the CCPA is illusory. The CCPA expressly preserves—rather than displaces—existing privacy protections. *See* Cal. Civ. Code § 1798.175(a), (e). Courts accordingly reject the argument that the CCPA authorizes conduct independently prohibited by CIPA, because the statutes serve different functions: the CCPA regulates certain data practices through notice and opt-out rights, while CIPA prohibits specific forms of interception absent consent. The existence of an opt-out regime does not immunize conduct that another statute forbids. Defendant cites no binding authority to the contrary—only a non-precedential California Superior Court order, which carries no weight here.

1108 (quoting *Shah*, 754 F. Supp. 3d at 930); *see also Flanagan*, 27 Cal. 4th at 775.

**2. Plaintiff adequately pleads a claim for intrusion upon seclusion.**

To state a claim for intrusion upon seclusion, Plaintiff must allege (1) a reasonable expectation of privacy and (2) an intrusion that is highly offensive. *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 945-46 (N.D. Cal. 2022). Plaintiff does so.

Plaintiff adequately alleges a reasonable expectation of privacy. She alleges that Defendant covertly intercepted her website activity and transmitted it to third-party data brokers for identification and profiling, without her knowledge or consent. Dkt. 1 ¶¶ 1, 16-25, 29-32, 57. Courts consistently hold that users have a reasonable expectation of privacy where their online activity is collected and disclosed without consent, particularly where it is used to identify them or build profiles. *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603 (9th Cir. 2020).

Defendant's arguments do not change that result. Its assertion that its tracking is "routine" does not defeat privacy expectations as a matter of law. Courts have rejected that position. *See Lewis*, 2025 U.S. Dist. LEXIS 263675, at *26. Nor does the existence of privacy policies or other statutes eliminate Plaintiff's expectation of privacy, particularly where she alleges she did not consent to the collection before it occurred. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 601 (N.D. Cal. 2021).

Plaintiff also plausibly alleges a highly offensive intrusion. That inquiry is context-specific and "cannot be resolved at the pleading stage." *Facebook Tracking*, 956 F.3d at 606; *Lewis*, 2025 U.S. Dist. LEXIS 263675, at *29. Plaintiff alleges that Defendant surreptitiously captured her website activity, extracted identifying signals, transmitted that information to third parties, and enabled the creation of a persistent identity profile for commercial use—all without her consent. Dkt. 1 ¶¶ 1, 16-25, 29-32, 57. Courts routinely find such allegations sufficient. *See Facebook Tracking*, 956 F.3d at 599; *Lewis*, 2025 U.S. Dist. LEXIS 263675, at *29-31.

Defendant's attempt to characterize this conduct as innocuous or "routine" fails for the same reason. The Complaint does not allege mere passive analytics. It alleges that Defendant used the Tracking Beacons to identify Plaintiff, monitor her activity, and disclose that information to third parties for profiling and monetization. That type of conduct—particularly when done covertly—is sufficient to support an intrusion claim. *Lewis*, 2025 U.S. Dist. LEXIS 263675, at *27-30.

At minimum, whether Defendant's conduct is "highly offensive" is a question for the trier of fact. *Facebook Tracking*, 956 F.3d at 606. Defendant's motion asks the Court to resolve that factual question now. The Court should decline to do so.

**3. Plaintiff states a claim under the UCL.**

Plaintiff states a claim under the UCL's unlawful and unfair prongs and adequately alleges standing.

The unlawful prong is straightforward. The UCL "borrows" violations of other laws and makes them independently actionable. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because Plaintiff has adequately alleged violations of CIPA and intrusion upon seclusion, she has necessarily alleged unlawful conduct under the UCL.

The unfair prong is likewise satisfied. Plaintiff alleges that Defendant covertly deployed the Tracking Beacon to capture visitor-identifying signals, transmit them to data brokers, and convert an anonymous website visit into an identifiable profile for commercial exploitation. Dkt. 1 ¶¶ 1-8, 16-32. That conduct is tethered directly to California's legislatively declared privacy policy. CIPA expressly recognizes that "advances in science and technology" threaten privacy and require protection of Californians' rights. Cal. Penal Code § 630. Conduct that falls squarely within that concern is "unfair." *See Bardin v. DaimlerChrysler Corp*., 136 Cal. App. 4th 1255, 1266-67 (2006) (unfair prong may be satisfied where conduct is tethered to legislatively declared policy).

Plaintiff also adequately alleges loss of money or property. A UCL plaintiff must

show she "lost money or property" as a result of the challenged conduct. Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322-23 (2011). That requirement is satisfied where a plaintiff alleges an economic injury, including where a plaintiff has a present or future property interest diminished. *Id.* at 323.

Here, Plaintiff alleges that her data has economic value, that Defendant extracted and exploited that value for its own commercial benefit without compensating Plaintiff. Dkt. 1 ¶¶ 26-30, 78-82. Courts recognize that personal data can constitute a form of property where it is collected, aggregated, and monetized, and that a plaintiff suffers economic injury where a defendant appropriates that value. *See, e.g.*, *Brown v. Google LLC*, 685 F. Supp. 3d 909, 925-26 (N.D. Cal. 2023) (economic injury adequately alleged where defendant profited from user data).

Defendant's contrary argument that Plaintiff must allege a specific out-of-pocket loss or completed sale misstates the law. The UCL does not require a realized transaction. *Kwikset*, 51 Cal. 4th at 323. Plaintiff alleges that her valuable data was taken, used, and monetized without her consent. That is sufficient at the pleading stage.

The UCL claim should proceed.

### D. <u>Leave To Amend Should Be Granted.</u>

If the Court finds any deficiency in Plaintiff's claims, leave to amend should be freely granted. Under Federal Rule of Civil Procedure 15(a), courts apply a policy of "extreme liberality" in permitting amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). Dismissal without leave to amend is improper unless it is clear that the complaint cannot be cured by amendment. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

Here, Defendant has not shown—nor could it—that amendment would be futile. To the extent the Court identifies any pleading deficiencies, Plaintiff can readily cure them with additional factual allegations. Leave to amend should therefore be granted.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss should be denied in its

entirety.

DATED: March 27, 2026

TAULER SMITH LLP

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Attorneys for Plaintiff Claire de Roulhac*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Claire de Roulhac, certifies that this brief contains 6,771 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 27, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen